**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

George & Company, LLC, a New York limited liability company,

Plaintiff,

v.

Xavier Enterprises, Inc., a Minnesota Corporation; and Keith Miller, an Individual, both d/b/a Game Planet and d/b/a Gameoutfitter.com; and Does 1-95,

Defendants.

Civil No. 09-2973 (DWF/RLE)

**MEMORANDUM OPINION AND AMENDED ORDER**

---

Anthony R. Zeuli, Esq., Gregory c. Golla, Esq., and Scott W. Johnston, Esq., Merchant & Gould PC, counsel for Plaintiff.

Brock P. Alton, Esq., and Roger H. Gross, Esq., Gislason & Hunter LLP, counsel for Defendant.

---

## INTRODUCTION

This matter is before the Court on a Motion for Temporary Restraining Order brought by Plaintiff George & Company, LLC ("George & Co."). In its Verified Complaint, George & Co. asserts claims for federal trademark infringement under 15 U.S.C. §§ 1115 and 1117, federal unfair competition and related claims under 15 U.S.C. § 1125, counterfeiting under 15 U.S.C. § 1116(d), state trademark and unfair competition, a violation of the Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*, a violation of the Unlawful Trade Practices Act, Minn. Stat. § 325D.09, *et seq.*,

and copyright infringement against Defendants Xavier Enterprises, Inc. ("Xavier"), Keith Miller[1] (both doing business as Game Planet and Gameoutfitter.com), and Does 1-95. George & Co. moves for a temporary restraining order with respect to its trademark infringement, counterfeiting, and unfair and deceptive trade practices claims based on Defendants' use of two federally registered marks. For the reasons stated below, the Court grants George & Co.'s motion.[2]

**BACKGROUND**

George & Co. is the developer and manufacturer of the LCR/Left Center Right dice game.[3] George & Co. has been manufacturing, selling, and advertising the game since 1986. (Smilanich Decl. ¶¶ 4-5.) George & Co. owns the right, title, and interest in the federally registered word mark LCR (the "LCR Mark") and the LCR and Design trademark.[4] George & Co. filed its application for the LCR Mark on July 1, 2004, and

---

1 Defendant Keith Miller is the President of Xavier.

2 On November 17, 2009, the Court issued a short order granting George & Co.'s motion for a temporary restraining order and indicating that a full Memorandum Opinion was forthcoming.

3 LCR is a dice game that is played by players taking turns rolling three dice, each of which contains the letters L, C, R, or dots/pips on the sides of the dice, and then the passing of chips around the table depending on the results of the dice rolls. The game continues until one player is left with chips and that player wins the center pot. (Decl. of Peter Smilanich ("Smilanich Decl.") ¶ 3.)

4 For purposes of the present motion, the Court considers only George & Co.'s LCR Mark. The Court makes no findings with respect to George & Co.'s claims as they relate to the LCR and Design mark.

(Footnote Continued on Next Page)

listed its first date of commercial use as 1986. The LCR Mark was granted registration, United States Trademark Registration 2,989,658, for use with dice games, party games and board games featuring specially marked dice and chips. (Smilanich Decl. ¶ 11, Ex. 2.) George & Co. uses the LCR Mark in connection with the sale of its LCR/Left Center Right dice games.

Beginning in the summer of 2008, Xavier began to purchase George & Co.'s LCR dice game to resell, as an authorized distributor, on its website, Gameoutfitter.com. (Smilanich Decl. ¶ 14; Aff. of Keith Miller ("Miller Aff.) ¶ II.) In the spring of 2009, Xavier began to manufacture and sell its own version of the LCR dice game under the name of "Left Center Right". (Miller Aff. ¶ VI.)[5]

George & Co. alleges that Xavier and the other defendants are intentionally infringing George & Co.'s rights by selling an inferior version of the "Left Center Right" game using George & Co.'s LCR Marks without consent or authorization. Specifically, George & Co. has submitted evidence that when it searched for "LCR" on Defendants' website, Gameoutfitter.com, a page appears on which Defendants' product appears in close proximity to George & Co.'s LCR game. (Smilanich Decl. ¶ 15, Ex. 3.) On that page, George & Co.'s product is listed as "Left Center Right-LCR Dice Game.

---

(Footnote Continued From Previous Page)
Plaintiff has also filed an application to register the word mark LEFT CENTER RIGHT. George & Co. does not rely on the LEFT CENTER RIGHT mark in support of its present motion.

[5] Xavier claims that it based its decision to market and sell its own Left Center Right game on the decision in *George & Co., LLC v. Imagination Entm't Ltd.*, No. 1:07cv498 (LMB/TRJ), 2008 WL 2883771 (E.D. Va. July 25, 2008).

Defendants' product is listed as "Left Center Right Dice Game." The images beneath each listed game both contain dice with the letters L, C, and R arranged on stacked chips.[6] On this page, Defendants' product is listed at a price lower than that of George & Co.'s product.

George & Co. has also submitted evidence that Defendants have been advertising their products using the LCR Mark. For example, Defendants advertise the images of its products through a link that uses LCR, and Defendants have been using LCR in the meta tags to drive customers to Defendants' allegedly infringing products. (Zeuli Decl. ¶¶ 2, 3, Ex. 9, 10.) In addition, Defendants purchased a google-link that is accessed by searching LCR and, when clicked on, directs the user to images of both George & Co.'s and Defendants' products. (*Id*. ¶ 4, Ex. 11.) Further, the webpage featuring Defendants' dice game explains that the "Game comes with 3 LCR dice, playing chips, and game instructions." (*Id*. ¶ 5, Ex. 12.) Finally, George & Co. has submitted evidence that on one occasion George & Co. ordered a George & Co. LCR dice game from Defendants' website but was sent Defendants' product. (Smilanich Decl. ¶ 19, Ex. 4.)

George & Co. requests that this Court enter a temporary restraining order enjoining Defendants from purchasing, offering for sale, selling, and distributing counterfeit LCR dice games; an order for expedited discovery; and an order to show cause for preliminary injunction.

---

[6] On George & Co.'s product, the dice are displayed as R, C, L when read from top to bottom of the stacked chips. Defendants' dice spell L, C, R when read the same way. (*Id*.; Verified Compl. ¶¶ 60, 61.)

## DISCUSSION

### I. Legal Standard

Under Eighth Circuit precedent, the Court considers four factors when determining whether a temporary restraining order should issue: (1) a probability of success on the merits; (2) the threat that the movant will suffer irreparable harm absent the restraining order; (3) the balance of harms; and (4) the public interest. *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). None of the factors by itself is determinative; rather, in each case the factors must be balanced to determine whether they tilt toward or away from granting injunctive relief. *See West Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986). The party requesting the injunctive relief bears the "complete burden" of proving that an injunction should be granted. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

#### A. Likelihood of Success on the Merits

The Court will first consider the likelihood of success on the merits. To prevail on any of its federal trademark claims, George & Co. must first establish that it owns a protectable mark. Here, there is no dispute that George & Co. owns the LCR Mark. Xavier contends, however, that the LCR Mark is not entitled to trademark protection because it is descriptive and has not obtained secondary meaning.

Courts classify marks into one of four categories: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful. *Frosty Treats, Inc. v. Sony Comp. Entm't Am. Inc.*, 426 F.3d 1001, 1004 (8th Cir. 2005). Generic marks are not entitled to trademark protection. *Id*. at 1005. Descriptive marks are protectable if they have

acquired secondary meaning. *Id*. Suggestive, arbitrary, and fanciful marks are "inherently distinctive" and therefore entitled to protection regardless of whether they have acquired secondary meaning. *Id*. Registration of a mark "shall be prima facie evidence of the validity of the registration mark." 15 U.S.C. § 1057(b). This presumption is rebuttable. *WSM, Inc. v. Hilton*, 724 F.2d 1320, 1326 (8th Cir. 1984). Here, the LCR Mark is registered and therefore presumed to be distinctive. In addition, George & Co. has submitted evidence that it has been using the LCR Mark for over twenty-five years and that the marks are associated with its dice game.

In support of its argument that the LCR Mark is descriptive and has not obtained secondary meaning, Defendants rely heavily on the decision in *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383 (4th Cir. 2009). In that case, George & Co. sued Imagination Entertainment Ltd. ("Imagination"), claiming that Imagination's distribution and sale of a dice game under the mark LEFT CENTER RIGHT infringed George & Co.'s rights in LEFT CENTER RIGHT and in its federally registered LCR Mark. *Imagination*, 575 F.3d at 392. The Fourth Circuit Court of Appeals affirmed the district court's decision granting summary judgment in favor of Imagination and determined that (1) George & Co. had no trademark rights in LEFT CENTER RIGHT because those words were descriptive and had not acquired secondary meaning and (2) there was no likelihood of confusion created by Imagination's use of LEFT CENTER RIGHT and George & Co.'s use of the LCR Mark. *Imagination*, 575 F.3d at 392, 400. In addition, despite the fact that the defendant in that case conceded that the LCR Mark was suggestive, the Fourth Circuit doubted that conclusion. *Id*. at 395 & n.12. In

*Imagination*, the Fourth Circuit, however, also noted that it was "obligated to defer to the determination of the USPTO, which constitutes *prima facie* evidence of whether a mark is descriptive or suggestive, " and that Imagination had the opportunity, but declined, to rebut the presumption raised by the mark's registration. *Id*. at 395. Defendants here also have the opportunity to rebut the presumption of the LCR Mark's distinctiveness. However, the Court determines that Defendants have not submitted evidence sufficient at this stage to rebut the presumption of validity and concludes that George & Co. is likely to succeed in showing that its LCR Mark is distinctive. The Court now turns to George & Co.'s trademark claims.

**1. Trademark Counterfeiting**

The Lanham Act prohibits the use of any "reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). A counterfeit mark is a "spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. *See also* 15 U.S.C. § 1116(d)(1)(B). In order to prevail on its claim of trademark counterfeiting, George & Co. must establish that Defendants (1) infringed a registered trademark in violation of the Lanham Act; and (2) intentionally used the trademark knowing that it was counterfeit, or was willfully blind to such use. *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536-37 (D. N.J. 2008).

The Court concludes that George & Co. has submitted sufficient evidence to demonstrate a likelihood of success on its trademark counterfeiting claim. First, George & Co. has submitted evidence that Defendants are using the LCR Mark in connection with the sale and offering for sale of Defendants' "Left Center Right" dice game. Specifically, Defendants have used the LCR Mark to sell Defendants' goods on their website, through meta tags, in on-line advertisements, on the images of Defendants' dice, in the on-line description of Defendants' dice, and on other accessories for sale related to the dice game. George & Co. has submitted additional evidence that strongly suggests that the Defendants used the LCR Mark intentionally knowing that its use was counterfeit. In particular, George & Co. has submitted evidence that Defendants were authorized distributors of George & Co.'s LCR dice games and that since July 2008, George & Co. sold approximately 30,000 LCR games to Defendants. George & Co. has also submitted evidence that Defendants began selling their own version of the LCR dice game in close proximity to George & Co.'s dice game, using images that are nearly identical for the respective games and selling Defendants' games at lower prices than George & Co.'s games. (Smilanich Decl. ¶¶ 14, 15 & Ex. 3.)[7]

---

[7] Defendants assert that when they started selling their own Left Center Right dice game, they removed the designation LCR from all other games, replaced LCR with Left Center Right, and attempted to ensure that their Left Center Right game was not being sold on a page containing similar LCR products. (Aff. of Keith Miller ¶ VII.) Defendants further explain that the side-by-side display of the parties' respective dice games was unintentional and occurred because residual LCR promotional advertisements had not been entirely deleted from Defendants' website. (Aff. of Keith Miller ¶ IX.) The Court has considered Defendants' affidavit testimony, but finds the evidence submitted by George & Co. more compelling at this point in litigation.

Based on this evidence, the Court concludes that George & Co. is likely to succeed in showing that Defendants have intentionally used the LCR Mark knowing that its use was counterfeit. In addition, as the Court explains below, George & Co. is likely to succeed on its trademark infringement claim.

**2. Trademark Infringement**

To succeed on its trademark infringement claim, George & Co. must show that Defendants' use of the allegedly infringing mark creates a likelihood of confusion. *See Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 601 (8th Cir. 1999). It may be presumed that counterfeiting another's mark creates a likelihood of confusion. *See Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995). Even if likelihood of confusion was not presumed, here the Court would still determine that it exists. Under the Eighth Circuit law, the Court analyzes (1) the strength of the owner's trademark; (2) the similarity between the parties' marks; (3) the products' competitive proximity; (4) the alleged infringer's intent to pass off its goods as those of the mark owner; (5) evidence of actual confusion; and (6) the type of product, its cost and the conditions of purchase and the degree of care to be exercised by potential customers. *SquirtCo v. Seven-Up Co.*, 628 F.2d 1086, 1901 (8th Cir. 1980).

First, the strength of a mark generally depends on the distinctiveness of the mark and the extent to which the mark is recognized by the relevant consumer class. *See Aveda Corp. v. Evita Mrktg., Inc.*, 706 F. Supp. 1419, 1428 (D. Minn. 1989). Here, as explained above, the LCR Mark is presumed to be distinctive. George & Co. has also submitted evidence of continuous use for over twenty-five years. The Court finds,

however, that the record is incomplete on the issue of the strength of the mark with respect to its recognition by the consumer class. Therefore the Court in unable to determine the mark's strength and concludes that this factor is neutral.

Second, as discussed above, Defendants used the identical word mark LCR to identify its products. Therefore, the similarity between the marks weighs in favor of a finding of infringement.

Third, George & Co. has submitted evidence that Defendants sell both its products and George & Co.'s products through its website. In addition, Defendants' website displays both George & Co.'s and Defendants' products on the same page and in close proximity to one another. The competitive proximity factor weighs in favor of a finding of infringement.

Fourth, intent on the part of an alleged infringer to pass off its goods as those of another raises an inference of likelihood of confusion. *See SquirtCo*, 628 F.2d at 1091. Here, the parties had a prior relationship through which Defendants were authorized to sell George & Co.'s products. Thus Defendants were aware of George & Co.'s rights in the LCR Mark, yet chose to continue to use the LCR Mark to sell its own dice game. The Court concludes that George & Co. will likely be able to demonstrate that Defendants intended to benefit from its former affiliation with George & Co. This factor weighs in favor of a finding of infringement.

Fifth, George & Co. has not submitted evidence of actual confusion but asserts that Defendants have sold 1,700 games in five weeks and argues that it is reasonable to conclude that some purchasers thought they were buying George & Co. games. While

actual confusion is "positive proof of likelihood of confusion," it is not essential to a finding of a likelihood of confusion. *SquirtCo.*, 628 F.2d at 1091. Because there is no evidence of actual confusion, this factor is neutral.

Finally, the Court considers the degree of care exercised by consumers. Here, the dice games are inexpensive at $5-$7 each, suggesting that customers exercise a low degree of care. Moreover, the prior relationship between the parties makes it even more likely that a customer, who may have visited Defendants' website before and seen George & Co. products, would be confused by the display of both parties' LCR games. Therefore, this factor weighs in favor of a finding of infringement.

In sum, the Court concludes that with the record presently before the Court, Plaintiffs are likely to succeed on their claim of trademark infringement.

**B. Irreparable Harm**

The movant must establish that irreparable harm will result if injunctive relief is not granted and that such harm will not be compensable by money damages. *See Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986). George & Co. asserts that Defendants' acts will cause irreparable harm because Defendants are placing inferior goods into the stream of commerce and that consumers will believe that George & Co. is the source of the inferior goods.[8] Defendants, on the other hand, assert that George & Co. will not suffer irreparable harm but instead will simply be forced to compete with

---

8 For example, George & Co. asserts that it examined Defendants' dice game and found that instead of engraving the letters onto the dice like George & Co. does, Defendants use an inferior screen-print. (Smilanich Decl. ¶¶ 18, 20.)

Defendants' goods in the marketplace and that any harm suffered would be capable of being remedied by a monetary award. Here, irreparable harm is presumed because the Court has already decided that Plaintiffs have demonstrated a showing of likelihood of confusion. *See Mutual of Omaha Ins. Co. v. Novak*, 836 F.2d 397, 403 n.11 (8th Cir. 1987). Even without a presumption, the Court finds that Defendants' continued use of the LCR Mark will cause George & Co. to lose control over the goodwill associated with the LCR Mark.

### C. Balance of Harms

The next *Dataphase* factor to be considered is whether the harm to the movant in the absence of injunctive relief outweighs the potential harm that granting injunctive relief may cause to the non-movant. *See Dataphase*, 640 F.2d at 114. Here, George & Co. asserts that because the potential harm to their reputation and goodwill outweighs any harm done to Defendants, the balance of harms favors injunctive relief. Defendants assert that this factor does not weigh in favor of either party because the harm suffered by either party is simply loss of profits. The potential harm to George & Co. goes beyond monetary harm and involves the loss of reputation and good will. Thus, the balance of harms tips in favor of granting the temporary restraining order. In addition, the Court has already required George & Co. to post a $15,000 bond to cover any potential harm to Defendants.

### D. Public Interest

The final *Dataphase* factor to be considered by a court is whether injunctive relief is in the public's interest. *See Dataphase*, 640 F.2d at 114. George & Co. asserts that the

public interest would be served by a temporary restraining order because confusion among consumers regarding the products would be avoided and the public has an interest in preventing consumer confusion. In contrast, Defendants assert the public has an interest in the ability to obtain the lowest price on goods, in avoiding monopolies, and in permitting competition. The Court finds that since it has already determined that George & Co. has demonstrated a likelihood of success on the merits of its trademark infringement claim, the public interest is best served by issuing a temporary restraining order. Infringement of a trademark is inherently contrary to the public interest. *See Am. Dairy Queen Corp. v. New Line Prods., Inc.*, 35 F. Supp. 2d 727, 733 (D. Minn. 1998).

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS ORDERED** that:

1. George & Co.'s Motion for Temporary Restraining Order (Doc. No. 2) is **GRANTED** as follows.

   a. Defendants and Defendants' directors, officers, agents, servants, employees, subsidiaries, affiliates, and all persons in active concert or participation with, through or under Defendants are temporarily enjoined from using in any way the LCR Mark or any reproduction, counterfeit, copy, or colorable imitation of the said marks in connection with the advertising, offering for sale, or sale of any of Defendants' goods or services.

b. This Order covers only the LCR Mark and does not make any findings with respect to George & Co.'s claims as they relate to the LCR and Design trademark.

2. As previously stated in the Court's November 17, 2009 Order, the parties are authorized to engage in discovery immediately.

3. The Court's previous ruling requiring Plaintiffs to post cash or a bond in the amount of $15,000 within ten (10) days of the November 17, 2009 Order is undisturbed.

Dated: December 4, 2009

s/Donovan W. Frank
DONOVAN W. FRANK
United States District Judge